# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH


### NOS. 2-08-390-CR
### 2-08-391-CR

BRANDON RAY SMITH A/K/A                                   APPELLANT
BRANDON SMITH

V.

THE STATE OF TEXAS                                              STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

### I. Introduction

Appellant Brandon Ray Smith a/k/a Brandon Smith appeals his convictions for two counts of aggravated assault with a deadly weapon. He contends in three issues that the evidence is legally and factually insufficient to support his convictions, that the trial court erred by admitting evidence of an extraneous offense, and that the trial court erred by denying his request for a limiting instruction concerning evidence of a different extraneous offense. We affirm.

## II. Procedural Background

A grand jury indicted Appellant for two counts of aggravated assault with a deadly weapon. The indictments collectively alleged that Appellant intentionally or knowingly threatened imminent bodily injury to Gary and Randolph (Randy) Osburg and that Appellant used or exhibited a truck as a deadly weapon during the commission of the assaults. The indictments also alleged that Appellant had a previous felony conviction. Appellant pleaded not guilty to both counts, was tried in October 2008, and the jury found Appellant guilty of both counts. During the punishment phase of his trial, Appellant pleaded true to the repeat offender notice in the indictments. The jury found the enhancement to be true and assessed Appellant's punishment at thirteen years' confinement for each count; the trial court ordered Appellant's sentences to run concurrently. These appeals followed.

## III. Factual Background

Randy Osburg testified at trial that he took his son, Gary Osburg, to a convenience store in Tarrant County, Texas, on February 11, 2008, to buy some cigarettes. As they were leaving the store, Randy and Gary saw Appellant and his female companion, Banu Kurt, involved in what they believed was an altercation; they saw Appellant hit Ms. Kurt twice in the chest with a closed fist. After the second hit, Ms. Kurt moved backward, hit the gas pump, and fell down. Sitting in Appellant's truck were two children Randy believed were between three and six years old; one of them was crying.

2

Gary further testified that, upon seeing the second hit, he got out of Randy's truck to help Ms. Kurt and to confront Appellant. As Gary approached Appellant, Appellant pulled brass knuckles from his pocket and told Gary to mind his own business. Gary and Randy started "mov[ing] around" Appellant, and although they did not "jump on" him, Appellant ran around the building and away from them.

Randy yelled for someone to call the police, and Appellant jumped into his truck and "acted like he was going to leave." Randy started talking to Ms. Kurt, but something in Ms. Kurt's expression made Randy turn around. Randy then saw Appellant driving straight at him. When Randy heard Appellant accelerate, Randy jumped into the bed of Gary's truck; Randy testified that he was afraid of dying or being badly hurt. Appellant then circled the gas pump and drove straight at Gary; Gary testified that he believed Appellant was trying to kill him, and Randy testified that he was afraid Appellant was going to kill Gary. When Gary saw Appellant driving at him, he grabbed a hammer from Randy's truck and threw it at Appellant, hitting the truck's windshield. Appellant slammed on the brakes, got out of his truck "in a complete rage," and ran after Gary while his truck was still moving. Appellant's unoccupied truck rolled across the street and came to rest against a sign and a telephone pole.

Appellant then chased Gary around the convenience store on foot. Gary came out from the back of the convenience store and got into Randy's truck, and Gary and Randy drove away from the store. Appellant ran across the street to his

3

truck and followed Gary and Randy. Randy testified that he drove away from the convenience store and turned right on a street two or three blocks away. As he and Gary approached a stop sign after turning right, Gary said, "He's behind us. He's going to ram us." Randy looked in his mirror and saw Appellant's truck "coming at [them] fast."

Randy said that he accelerated and "got maybe a little bit across the street when [Appellant] hit us." Randy testified that he accelerated again and believed he was driving sixty or seventy miles-per-hour when Appellant "rammed [him] two or three more times." Randy testified that Gary had retrieved his hammer from the convenience store parking lot and was leaning out the truck window as they drove to throw the hammer at Appellant "to slow him down." Randy also testified that he was afraid Appellant would push them into traffic at an upcoming intersection. Randy said that he then slammed his brakes and that Appellant also slammed his brakes, avoiding a collision. When traffic on the cross-street was clear, Randy accelerated again but Appellant approached them in the outside lane. Gary said, "He's going to ram you," and Randy again slammed his brakes. Randy testified that Appellant "ended up going across our lane, trying to ram us from the side, but luckily, he just barely missed me." Randy said that Appellant's truck crossed some railroad tracks, "went into the air," and stopped in a ditch.

Gary testified that he was scared and his adrenaline was going when they drove away from the convenience store. Gary testified that while Randy drove, Gary

4

looked out the window and saw Appellant get into his truck and follow them. Gary said less than fifteen seconds passed before Appellant "was already up on us," tailgating them. Gary testified that Appellant "ended up striking" the rear of Randy's truck three times, jarring Randy and Gary. As Randy approached a T-intersection, Randy turned right and Appellant followed. Gary testified that he "saw [Appellant] coming up on us really fast and I told my dad to get over into the next lane and stop and hit his brakes. And when he did, [Appellant] was coming at us, barely missed us, and went into a ditch."

Randy testified that after Appellant drove into the ditch, he and Gary drove back to the convenience store, hoping the police had arrived by that time. The police were there and noted damage to the bumper on Randy's truck, but no photographs were taken. Randy said he was somewhat able to repair the dent in the bumper by tying it to a tree and pulling it out. The police also noted front-end damage to Appellant's truck, but the officer did not recall noticing any damage to the windshield.

During cross-examination, Randy acknowledged that he had joked with someone after the altercation that he would gladly have the case dropped and all charges dismissed if Appellant would meet Gary for a one-on-one fight. Randy also admitted that he "forgot" to tell the jury that he also had a weapon during the altercation—a tile cutter he had gotten from the bed of his truck.

Tricia Nyamongo Walton, the clerk from the convenience store, testified that she saw Appellant, a woman, and two other men standing behind a white truck. She

5

saw Appellant drive the white truck around the store, and she told police that Appellant was "driving crazy," almost ran into the building, the gas pumps, and her car. She also told police that Appellant chased the other men with his truck.

Ms. Kurt testified for the defense that she and Appellant were not fighting but were instead "just playing around." She said that Appellant pushed her but that she tripped over the gas pump. Ms. Kurt did, however, tell the police that Appellant hit her in the face. She testified that as Randy and Gary approached Appellant, she gathered her children, ages ten and eight, and went into the convenience store. She said that she did not see what was thrown at Appellant's truck but that she did see damage to the windshield. She also testified that she did not see Appellant drive toward anyone.

## IV. Sufficiency of the Evidence

In his first point, Appellant contends that the evidence is legally and factually insufficient to sustain his convictions for aggravated assault with a deadly weapon.

## A. Alleged Waiver by Multifarious Point on Appeal

The State contends that we should summarily overrule Appellant's first point because it is multifarious. A multifarious issue is one that embraces more than one specific ground. *Stults v. State*, 23 S.W.3d 198, 205 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). By combining more than one contention in a single issue, an appellant risks rejection on the ground that nothing is presented for review. *Foster v. State*, 101 S.W.3d 490, 499 (Tex. App.—Houston [1st Dist.] 2002, no pet.). But

6

an appellate court may address a multifarious issue that is sufficiently developed in the brief. *Id.* Although Appellant's first point addresses both legal and factual sufficiency and challenges both venue and the evidence to support each element of the indicted offenses, we are able to discern Appellant's contentions on appeal. Thus, we will not summarily overrule Appellant's first point and will substantively address it. *See Newby v. State*, 169 S.W.3d 413, 414 (Tex. App.—Texarkana 2005, pet. ref'd) (declining to overrule point of error as multifarious "in the interest of resolving substantive issues").

## B. Venue

Appellant contends "there is no evidence that the striking of the victims['] truck took place in Tarrant County." However, an appellate court must presume that venue was proved unless it was challenged in the trial court or the record affirmatively shows the contrary. Tex. R. App. P. 44.2(c)(1). Appellant does not point us to a place in the record where he disputed venue at trial, and our review of the record did not reflect any such objection. Further, the evidence at trial showed that the convenience store was located in Tarrant County, that Appellant chased Randy and Gary away from the convenience store, and that Randy and Gary returned to the convenience store to speak with police after the chase. And our review of the record did not reveal evidence that the chase occurred in a county other than Tarrant County. Thus, because Appellant failed to dispute venue before the trial court and the record does not affirmatively refute proper venue, we must

7

presume that venue was proved in the trial court. *See id.*; *Hernandez v. State*, 198 S.W.3d 257, 268 (Tex. App.—San Antonio 2006, pet. ref'd) (op. on reh'g) (presuming venue proved in trial court because appellant did not object at trial and record did not affirmatively refute proper venue). We overrule this portion of Appellant's first point.

## C.   The Evidence is Legally Sufficient

### 1.  Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

In determining the legal sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

8

### 2. Applicable Law

A person commits the offense of aggravated assault if he "intentionally or knowingly threatens another with imminent bodily injury" and "uses or exhibits a deadly weapon during the commission of the assault."  Tex. Penal Code Ann. §§ 22.01(a)(2); 22.02(a)(2) (Vernon Supp. 2009).  A deadly weapon is anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.  Tex. Penal Code Ann. § 1.07(a)(17)(B) (Vernon Supp. 2009).  "It is reasonably clear that driving an automobile constitutes the use of it and that driving [an automobile] in a manner capable of causing death or serious bodily injury constitutes [the automobile] a deadly weapon." *Tyra v. State*, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995).

### 3. Analysis

As a general rule, the State must, on proper request, elect the instance on which it will rely for conviction when the State's evidence shows multiple instances of conduct conforming to a single indictment allegation.  *Martinez v. State*, 225 S.W.3d 550, 555 (Tex. Crim. App. 2007).  Here, following Appellant's request, the State elected to rely on Appellant's conduct after he followed Randy and Gary from the convenience store to prove his commission of aggravated assault.  With the State's election in mind, Appellant contends there is no evidence that he "intentionally threatened the victims with imminent bodily injury by chasing them in

9

the truck [or] that he intentionally struck their truck during the chase or that anyone was placed in danger with the vehicle."[1] We disagree.

The record contains legally sufficient evidence that Appellant intentionally or knowingly threatened Randy and Gary with imminent bodily injury. *See* Tex. Penal Code Ann. § 22.01(a)(2). Randy testified that he was afraid of being killed or badly hurt by Appellant before they left the convenience store and that Appellant chased them in his truck after they left. Randy said that he drove away from the convenience store and turned right on a street two or three blocks away, that he saw Appellant's truck "coming at [them] fast," that he made several attempts to evade Appellant but that Appellant hit them with his truck two or three times, and that he drove sixty or seventy miles-per-hour to escape Appellant but that Appellant continued his attempts to ram their truck. The chase ended only after Appellant tried to ram them from the side but barely missed and drove into a ditch.

Gary testified that he believed Appellant was trying to kill him in the convenience store parking lot. He said that less than fifteen seconds passed before Appellant caught them and struck them with his truck three times, jarring them. Gary testified that Appellant followed them after Randy turned right and was "coming up on [them] really fast." Gary said that after Randy hit the brakes, Appellant "barely missed" them and drove into a ditch. This evidence is legally sufficient to support

---

[1] Appellant's argument focuses on whether he took intentional action, but we note that the statute provides that it is an offense to "intentionally or knowingly threaten[] another with imminent bodily injury." Tex. Penal Code Ann. § 22.01(a)(2).

the jury's finding that Appellant intentionally or knowingly threatened Randy and Gary with imminent bodily injury. *See* Tex. Penal Code Ann. § 22.01(a)(2); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778; *see also Dominique v. State*, No. 01-09-00385-CR, 2010 WL 1571180, at *3 (Tex. App.—Houston [1st Dist.] Apr. 8, 2010, no pet. h.) (mem. op., not designated for publication) (holding evidence legally and factually sufficient to sustain conviction for aggravated assault on a public servant and stating that "[t]he jury reasonably could have inferred that Dominique's conduct was intentional based on his repeated attempts to run down the police officers who stood in his way").

The evidence is also legally sufficient to support the jury's deadly weapon findings. The definition of a deadly weapon under section 1.07(a)(17)(B) includes "anything that in the manner of its use or intended use is *capable* of causing death or serious bodily injury." *See* Tex. Penal Code Ann. § 1.07(a)(17)(B) (emphasis added). A car can be a deadly weapon. *Butler v. State*, 928 S.W.2d 286, 288 (Tex. App.—Fort Worth 1996, pet. ref'd).

Randy and Gary collectively testified that Appellant rammed them with his vehicle two or three times, and Randy testified that Appellant caught them even after he drove sixty or seventy miles-per-hour while fleeing from Appellant. Although neither Randy nor Gary testified that they were physically injured by Appellant's conduct, there is no requirement that the deadly weapon actually cause death or serious bodily injury before the jury can affirmatively answer the deadly

11

weapon question. *See* Tex. Penal Code Ann. § 1.07(a)(17)(B); *see also McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (holding section 1.07(a)(17)(B)'s "plain language does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury"). The evidence is legally sufficient to support the jury's finding that Appellant used or exhibited a deadly weapon, his vehicle, while assaulting Randy and Gary.

Viewing the evidence in a light most favorable to the prosecution, a rational jury could have determined beyond a reasonable doubt that Appellant used or exhibited a deadly weapon, his vehicle, while intentionally or knowingly threatening Randy and Gary with imminent bodily injury. *See* Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. We hold the evidence was legally sufficient to support the jury's verdicts, and we overrule the portion of Appellant's first point that challenges the legal sufficiency of the evidence.

## C.     The Evidence is Factually Sufficient

### 1. Standard of Review

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). We

12

cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id.* We may not simply substitute our judgment for the factfinder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008).

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Moreover, an opinion reversing and remanding on factual insufficiency grounds must detail all the evidence and clearly state why the finding in question is factually insufficient and under which ground. *Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); *see Steadman v. State*, 280 S.W.3d 242, 247 & n.15 (Tex. Crim. App. 2009).

### 2. Factually Sufficient Evidence

Reviewing all the evidence in a neutral light, we recall that there were no photographs or other physical evidence showing the extent of damage to Randy's truck, that there was no direct testimony that Appellant intentionally or knowingly hit the rear of Randy's truck, and that neither Randy nor Gary testified that they were in fear of or in danger of imminent bodily injury during the chase itself. We also recall that Randy and Gary confronted Appellant with weapons in the convenience store parking lot. However, Randy and a police officer both testified that there was physical damage to both Randy's and Appellant's trucks. Further, Randy and Gary both testified that Appellant repeatedly rammed or attempted to ram his truck into their truck during the chase, and Randy testified he drove sixty to seventy miles-per-hour to escape Appellant. In addition, Randy and Gary both expressly testified that they were in fear of death or serious bodily injury in the convenience store parking lot and that Appellant's aggression toward them continued as he chased them away from the convenience store. Moreover, Appellant chased Randy and Gary, as the aggressor, at high speed after Randy and Gary left the convenience store in Randy's truck.

Viewing the evidence in a neutral light, we conclude a rational trier of fact could have found beyond a reasonable doubt that Appellant used or exhibited a deadly weapon, his vehicle, while intentionally or knowingly threatening Randy and Gary with imminent bodily injury. *See* Tex. Penal Code Ann. §§ 1.07(a)(17)(B), 22.01(a)(2), 22.02(a)(2). We cannot say that the evidence is so weak that the jury's

14

determination is clearly wrong or manifestly unjust or that the conflicting evidence so greatly outweighs the evidence supporting the convictions that the jury's determination is manifestly unjust.  *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417.  We therefore hold the evidence is factually sufficient to support the jury's verdicts.  We overrule the remainder of Appellant's first point.

## V.  Alleged Extraneous Offense

In his second point, Appellant contends that the trial court egregiously erred by admitting evidence of his use or possession of brass knuckles, an extraneous offense.  The State counters that Appellant waived any error because the evidence was previously introduced without objection and that the evidence was properly admitted as contextual evidence.

### A.    Preservation of Error

The State contends that Appellant waived any error concerning evidence of brass knuckles because evidence of brass knuckles was introduced without objection during Randy's testimony.  We disagree.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).  Further, the

15

trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). A request for a running objection is timely and preserves error as long as it does not encompass too broad a subject matter during too broad a time or over different witnesses. *Ford v. State*, 919 S.W.2d 107, 113–14 (Tex. Crim. App. 1996); *Sattiewhite v. State*, 786 S.W.2d 271, 283 n.4 (Tex. Crim. App. 1989), *cert. denied*, 498 U.S. 881 (1990).

Here, the parties held a lengthy discussion with the trial judge before opening statements concerning Appellant's motion in limine to exclude any evidence that Appellant "retrieved some brass knuckles . . . [d]uring the course of the incident." Appellant objected at that time to any reference to the brass knuckles under rules of evidence 401, 402, 403, and 404(b). The trial court overruled the motion in limine but asked Appellant's counsel to "renew all [his] prior trial objections" before brass knuckles were mentioned in evidence. The trial court then told Appellant's counsel that it would grant a running objection to any reference to the brass knuckles if the trial court's ruling remained the same. Then, in accordance with the trial court's instructions, and before Randy testified, Appellant's counsel advised the trial court that "this is one of the witnesses identified in my earlier objection and motion as to the allegation to the brass knuckles. As to this witness, I'd renew all those previous objections on the grounds that I made." The trial court overruled the objection but

stated that Appellant had "a running objection as to all of those grounds previously stated." Although Appellant's motion in limine did not preserve error, Appellant again objected to the evidence before Randy testified. *See Harnett v. State*, 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, pet. ref'd) ("It is axiomatic that motions in limine do not preserve error."). Thus, we hold that Appellant properly preserved his second point for our review.

**B.     Analysis**

The admissibility of evidence is within the discretion of the trial court and will not be overturned absent an abuse of discretion. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). So long as the trial court's ruling lies within the zone of reasonable disagreement, the appellate court should affirm. *Id*.

"Same transaction contextual evidence" is evidence reflecting the context in which a criminal act occurred. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). It is a recognition that events do not occur in a vacuum, and a jury has a right to hear what occurred immediately before and after the offense in order to realistically evaluate the evidence. *Id*. Extraneous offenses may be admissible as same transaction contextual evidence when "'several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction.'" *Prible v. State*, 175 S.W.3d 724, 731–32 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005) (quoting *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993)). This type of evidence results when an extraneous matter is so

intertwined with the State's proof of the charged offense that avoiding reference to it would make the State's case incomplete or difficult to understand. *Id*. at 732.

The evidence at trial indicated that Appellant pulled the brass knuckles from his pocket as Gary initially approached him in the parking lot. The evidence was relevant to Appellant's intent and was arguably part of an indivisible criminal transaction. We conclude the evidence was admissible as same transaction contextual evidence because the events are so interwoven that avoiding reference to Appellant's retrieval of the brass knuckles would make the State's case incomplete or difficult to understand. *See Amaya v. State*, 759 S.W.2d 737, 739 (Tex. App.—El Paso 1988, pet. ref'd) (holding attempted theft that preceded the charged shooting offense was relevant to the motivation for the ensuing violent confrontation between Appellant and the theft victim's older brothers because the "facts of the two incidents [were] so interwoven as to necessitate admission of evidence of both for a full contextual evaluation of the indicted offense by the jury"). The trial court did not abuse its discretion by admitting, under rule 404(b), the evidence concerning Appellant's use or possession of the brass knuckles.

Under Texas Rule of Evidence 403, otherwise relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. A Rule 403 analysis by the trial court should include, but is not limited to, the following considerations: (1) the probative value of the evidence; (2) the potential of the evidence to impress the jury in some irrational,

18

indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). Although a trial court must still perform a balancing test to see if the same transaction contextual evidence's probative value is substantially outweighed by its prejudicial effect, the prejudicial nature of contextual evidence rarely renders such evidence inadmissible, as long as it sets the stage for the jury's comprehension of the whole criminal transaction. *Swarb v. State*, 125 S.W.3d 672, 681 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd).

We have already concluded that the State had a need to introduce the evidence of the brass knuckles as relevant to Appellant's intent. Further, the State did not use an inordinate amount of trial time to introduce the evidence. Moreover, the record does not show that the evidence of the brass knuckles had the potential to impress the jury in some irrational, indelible way. Finally, any arguable prejudice suffered by Appellant by the introduction of the evidence does not rise to the level of substantially outweighing the evidence's probative value in providing context for the charged offense. We hold that the trial court did not abuse its discretion by admitting the evidence concerning Appellant's use or possession of the brass knuckles. We overrule Appellant's second point.[2]

---

[2] Because we hold that the evidence concerning the brass knuckles was admissible under rules 404(b) and 403 of the rules of evidence, we need not address whether the evidence was admissible under rules 401 and 402. *See* Tex. R. App. P. 47.1 (requiring appellate court to address "every issue raised and necessary to final disposition of the appeal").

## VI.  Limiting Instruction

In his third point, Appellant contends that the trial court egregiously erred by denying his requested rule 105 limiting instruction concerning the extraneous offense of twice assaulting Ms. Kurt.  *See* Tex. R. Evid. 105.  The State counters that Appellant failed to preserve error because the request for a limiting instruction was untimely.  We agree with the State.

In *Delgado v. State*, the court of criminal appeals stated,

> if a defendant does not request a limiting instruction under Rule 105 *at the time that evidence is admitted*, then the trial judge has no obligation to limit the use of that evidence later in the jury charge.  This doctrine is a sensible one because otherwise a jury might sit through most of a trial under the mistaken belief that certain evidence is admissible for all purposes when, in fact, it is not.  Once evidence has been admitted without a limiting instruction, it is part of the general evidence and may be used for all purposes.  But even when a party properly requests a limiting instruction at the time the evidence is first offered, the trial judge need not give an instruction on the burden of proof at that time.  Taking the cases together, then, a limiting instruction concerning the use of extraneous offense evidence should be requested, and given, in the guilt-stage jury charge only if the defendant requested a limiting instruction *at the time the evidence was first admitted*.

235 S.W.3d 244, 251 (Tex. Crim. App. 2007) (emphasis added) (internal citations omitted).

Here, Appellant did not request a limiting instruction concerning Appellant's assault of Ms. Kurt until the State had completed its direct examination of Randy. And it was during the State's direct examination of Randy that he testified that Appellant hit Ms. Kurt twice in the convenience store parking lot.  Thus, Randy's

testimony that Appellant twice hit Ms. Kurt had already been admitted as part of the general evidence and was usable for all purposes. *See id.* Appellant failed to request a limiting instruction at the time the evidence of the assault was first admitted, and therefore failed to preserve this point for appellate review. *See id.*; *see also Prescott v. State*, 123 S.W.3d 506, 515–16 (Tex. App.—San Antonio 2003, no pet.) (holding defendant who failed to request limiting instruction concerning use of extraneous offenses "at the moment the evidence [was] admitted" was not entitled to limiting instructions in jury charge). We overrule Appellant's third point.

## VII. Conclusion

Having overruled each of Appellant's three points, we affirm the trial court's judgments.

ANNE GARDNER
JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

PUBLISH

DELIVERED: May 27, 2010

21