Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-11-00435-CR

Terrance M. **FLETCHER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2010CR1384
Honorable Philip A. Kazen, Jr., Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
            Phylis J. Speedlin, Justice
            Steven C. Hilbig, Justice

Delivered and Filed:  May 2, 2012

AFFIRMED

Terrance M. Fletcher was convicted by a jury of murder.  On appeal, Fletcher asserts: (1)
the evidence is insufficient to support the jury's verdict; (2) the trial court erred in denying his
request to include criminally negligent homicide as a lesser included offense in the charge; (3)
the trial court abused its discretion in admitting evidence of an extraneous offense; and (4) the
trial court abused its discretion in denying his motion for a mistrial after three jurors were
observed separated from the other jurors.  We affirm the trial court's judgment.

**SUFFICIENCY**

In evaluating the legal sufficiency of the evidence to support a criminal conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We defer to the responsibility of the trier of fact to draw reasonable inferences from basic facts to ultimate facts. *Id*. "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id*. "On appeal, the same standard of review is used for both circumstantial and direct evidence cases." *Id*.

The jury was charged to find Fletcher guilty of murder if it found that he either intentionally or knowingly caused the death of Rosalinda Vega or if he intended to cause her serious bodily injury and committed an act clearly dangerous to human life. The jury was also charged with the law of transferred intent, which holds a person criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked was that a different person was injured, harmed, or otherwise affected. *See* TEX. PENAL CODE ANN. § 6.04(b)(2) (West 2011).

Fletcher challenges the sufficiency of the evidence to show that he had the requisite culpable mental state. Both parties agree that the evidence was required to show that Fletcher intended the result of his conduct. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). Intent can be inferred from the acts, words, and conduct of the accused and also from the extent of the victim's injuries. *Id*. Intent can also be inferred from the use of a deadly weapon. *Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003).

Seth Ryan Coronado was visiting his father, Robert Coronado, Jr. ("Big Robert"), when he became upset. Eventually, Seth told his father that his mother's boyfriend, Fletcher, had abused him by putting his hands on him. Seth was afraid to tell his father because he had been told that he would not be able to see his father again if he told him. Big Robert's other son, Robert Coronado III ("Little Robert"), gave Fletcher's phone number to Big Robert, and Big Robert called and confronted both Fletcher and Seth's mother, Jessica Martinez. A short time later, Martinez arrived to pick up her sons. Although Martinez had custody of Seth, Big Robert had custody of Little Robert. Martinez was yelling that she wanted to get her sons away from Big Robert's home before "something happened." Big Robert testified that a threat had been made and, "Supposedly, they were going to get hurt." Although Martinez left with Seth, Little Robert refused to go with her.

Martinez was observed driving away, but she quickly stopped beside Fletcher's truck which was parked approximately one block down the street. Big Robert and a friend, Tony Villarreal, decided to follow Fletcher's truck. After they left, Fletcher repeatedly called Big Robert's home. Although Big Robert's girlfriend, Rosalie Cruz, answered the phone once, she quickly hung up and did not answer any further calls.

Big Robert and Tony returned to the house about five or ten minutes after they left. Big Robert exited the car and told Cruz, his mother, Rosalinda Vega, and Little Robert to go back inside the house; however, they remained outside by the gate while Big Robert's sister approached Tony's car. As they stood talking, Little Robert called out that Fletcher was returning. As Fletcher approached where everyone was standing, he slowed his truck, changed lanes so he was driving on the wrong side of the road closest to where everyone was standing, and threw a brick out the window. The brick struck Vega, who immediately fell to the ground

bleeding from her eyes, nose, mouth, and head. After throwing the brick, Fletcher laughed, sped up, and drove off. Vega remained comatose and eventually died. Detective Timothy O'Connell, who was assigned to investigate the case, testified that the brick was a deadly weapon in its manner of use.

Based on the evidence presented, the jury could have found that Fletcher threatened to harm occupants of Big Robert's home after Big Robert confronted him. From Fletcher's actions in slowing his truck and changing lanes, the jury could have inferred that Fletcher intended to hit someone with the brick. From Fletcher's laugh, the jury could have inferred that Fletcher achieved his goal when the brick struck Vega and she fell. Finally, the jury could have inferred Fletcher's intent from his use of the brick, which Detective O'Connell described as a deadly weapon, and the extent of Vega's injuries. *See Brown*, 122 S.W.3d at 800; *Patrick*, 906 S.W.2d at 487. Accordingly, based on the evidence presented, a rational jury could have found that Fletcher intended to cause serious bodily injury and committed an act clearly dangerous to human life by deliberately throwing the brick at the occupants of the yard. Fletcher's first issue is overruled.

## LESSER INCLUDED OFFENSE

"The determination of whether a lesser-included-offense instruction requested by a defendant must be given requires a two-step analysis: (1) Is the requested charge for a lesser-included offense of the charged offense? (2) Is there trial evidence that supports giving the instruction to the jury?" *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011). Under the second prong of the analysis, the reviewing court must "determine if there is some evidence in the record which would permit a jury to rationally find that, if the defendant is guilty, he is guilty

only of the lesser-included offense." *Id*. at 145. "The evidence must establish the lesser-included offense as a valid, rational alternative to the charged offense." *Id*

Fletcher argues that the trial court erred in overruling his request for the lesser included offense of criminally negligent homicide. The evidence presented, however, did not establish criminally negligent homicide as a valid, rational alternative. A person acts with criminal negligence if the actor ought to be aware of a substantial and unjustifiable risk that a particular result will occur, but fails to perceive that risk. *See* TEX. PENAL CODE ANN. § 6.03(d) (West 2011). Based on Fletcher's actions in slowing his truck and changing lanes to better position himself for aiming the brick, a rational jury could not have found that Fletcher failed to perceive the risk that he could cause serious bodily injury if he hit one of the occupants of the yard with the brick. Moreover, although the jury was charged with the lesser included offense of manslaughter, enabling the jury to find Fletcher guilty of a lesser offense if it found that Fletcher was aware of but consciously disregarded a substantial and unjustifiable risk, the jury convicted Fletcher of murder. *See Masterson v. State*, 155 S.W.3d 167, 171-72 (Tex. Crim. App. 2005) (holding omission of criminally negligent homicide from jury charge resulted in no harm where jury rejected manslaughter as a lesser included offense in the charge and convicted defendant of murder). Fletcher's second issue is overruled.

### EXTRANEOUS OFFENSE

Fletcher next contends the trial court abused its discretion in admitting into evidence the allegation that he abused Seth. We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard. *Montgomery v.* State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). "[I]f the trial court's evidentiary ruling is correct on any theory of law applicable to

that ruling, it will not be disturbed" regardless of the reason given for the trial court's ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Although evidence of extraneous offenses is normally inadmissible pursuant to Rule 404(b) of the Texas Rules of Evidence, evidence of extraneous offenses is admissible as same transaction contextual evidence to show the context in which a criminal act occurred. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). "This evidence is considered 'res gestae,' under the reasoning that events do not occur in a vacuum, and the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that it may realistically evaluate the evidence." *Id.* "This type of evidence results when an extraneous matter is so intertwined with the State's proof of the charged offense that avoiding reference to it would make the State's case incomplete or difficult to understand." *Smith v. State*, 316 S.W.3d 688, 699 (Tex. App.—Fort Worth 2010, pet. ref'd).

In this case, the evidence of the alleged abuse was necessary to show what occurred immediately prior to Fletcher's driving by Big Robert's home and throwing the brick at the yard's occupants. The absence of this contextual evidence would "make the State's case incomplete or difficult to understand." *Id.* Accordingly, the trial court did not abuse its discretion in overruling Fletcher's objection to the evidence.

## MOTION FOR MISTRIAL

In his final issue, Fletcher contends the trial court erred in denying his motion for mistrial based on three jurors separating from the other jurors during deliberations. Fletcher cites two provisions from the Texas Code of Criminal Procedure in support of his argument: article 36.22, which prohibits a person from conversing with a juror about the case, and article 35.23, which

requires the court to give jurors proper instructions with regard to their conduct as jurors when they are separated.

After the trial judge observed the jurors in the hallway, he questioned them about their actions. One juror explained that she was calling her eleven-year-old son to ensure that he was home safe from school. The other two jurors explained that they were using the restroom.

"A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). "A trial court's denial of a mistrial is reviewed for an abuse of discretion." *Id*. "An appellate court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling." *Id*. "The ruling must be upheld if it was within the zone of reasonable disagreement." *Id*.

In this case, there is no evidence in the record that any of the three jurors conversed with another person "about the case." In fact, when questioned by the trial judge, all three jurors denied discussing the case with anyone. Accordingly, the trial court did not abuse its discretion in denying the motion for mistrial based on an alleged violation of article 36.22. *See Thomas v. State*, 336 S.W.3d 703, 716 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

With regard to article 35.23, a jury is permitted to separate unless the court on its own motion or on the motion of a party orders that the jury is not allowed to separate after it has been given the charge. TEX. CODE CRIM. PROC. art. 35.23; *see also Sanchez v. State*, 906 S.W.2d 176, 178 (Tex. App.—Fort Worth 1995, pet. ref'd) (noting 1989 statutory amendment to article 35.23 no longer forbids separation of jurors after the court reads the charge). The record in this case contains no motion by Fletcher to prevent the jury from separating. Although Fletcher contends the trial court ordered the jury not to separate early in the trial, the trial court merely commented

that the jury's schedule would change once deliberations began because the jury would need to stay together in an attempt to reach a unanimous verdict. This general comment does not rise to the level of an order as contemplated by article 35.23. Accordingly, the trial court did not err in denying the motion for a mistrial based on article 35.23. Finally, Fletcher contends the record failed to establish that the other jurors ceased deliberating while the three jurors were absent from the room. If Fletcher's attorney believed additional questioning of the other jurors was necessary, he had a duty to request that additional questioning as a lesser remedy to a mistrial. *See Ocon*, 284 S.W.3d at 886-87. A mistrial would be appropriate only if Fletcher had proven an error incurable by less drastic remedies. *Id*. at 888.

## CONCLUSION

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH