

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-17-00377-CR
_____

ERIC JAMAL JOHNSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 362nd District Court
Denton County, Texas
Trial Court No. F16-369-362; Honorable Bruce McFarling, Presiding

May 2, 2019

## MEMORANDUM OPINION

Before CAMPBELL, PIRTLE, and PARKER, JJ.

Following a plea of not guilty, Appellant, Eric Jamal Johnson, was convicted by a jury of murder with an affirmative finding on use of a deadly weapon, a firearm.[1] He was sentenced to forty-four years confinement. Presenting two issues, Appellant contends the trial court erred in (1) admitting photographs unrelated to the offense charged in

---

[1] TEX. PENAL CODE ANN. § 19.02(b)(2) (West 2019).

violation of Rule 404(b) of the Texas Rules of Evidence and (2) failing to grant a motion for mistrial after the State introduced the question of gangs into the case when there was no evidence of gang affiliation. We affirm.[2]

BACKGROUND

On December 31, 2015, Sara Mutschlechner, a twenty-year-old student at the University of North Texas, and a friend, Alexis ("Lexi") Mueller, met some other friends, Cori Perry and Daniel Gardner. The four decided to attend a "rap house party" they had heard about;[3] however, by the time they arrived at the party, the police had arrived and people were starting to leave. At the time, the four individuals were in Sara's vehicle, with Sara driving and Lexi in the front passenger seat. Cori was behind Lexi in the rear passenger seat and Daniel was seated behind Sara. At approximately 2:00 a.m., they encountered another group of individuals in a Honda Pilot, leaving the same party. The Pilot was being driven by Appellant and he was accompanied by four of his friends.

At a red light, Appellant's Honda and Sara's vehicle were stopped side by side. The Pilot was positioned to the right of Sara's vehicle. The occupants of Appellant's vehicle began asking Sara and her passengers where the next party was going to be. Although the record is not clear as to exactly what was said or by whom, this street level vehicle-to-vehicle discussion escalated into a verbal dispute. Lexi rolled up her window

---

[2] Originally appealed to the Second Court of Appeals, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Second Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

[3] A flyer for a "New Year's Bash" was promoted via social media and it also advertised performances by several rap artists.

2

but Cori, who had his window rolled down, continued arguing with the occupants of Appellant's vehicle. According to Cori, that is when Appellant pointed a gun at the rear passenger side and threatened to shoot him.[4]

Appellant testified that he ran through the red light to pull away from Sara's vehicle but she caught up to him and passed him after the light turned green. According to Lexi (in the front passenger seat), she observed the tip of a gun protrude out of the corner window of Appellant's vehicle immediately before several shots rang out. One of the bullets struck Sara behind her ear and exited through her eye. She collapsed and lost control of the vehicle which collided with another vehicle before coming to rest after striking a utility pole. Witnesses at the scene of the accident called 911. Although Sara was brain dead at the scene, she was an organ donor and was transported to the hospital and kept on life support for a few days.

At the time, Appellant was a Marine stationed in Yuma, Arizona, but he was visiting his mother during the holidays and had borrowed her vehicle to attend the rap house party. During the investigation, Sara's friends utilized social media to gather information about the shooting and provided it to the detectives to track down Appellant. Lexi identified him from a photo lineup.

Working with the Denton Police Department, a Naval Criminal Investigative Services investigator in Yuma received a copy of an arrest warrant for Appellant. He was arrested in Yuma a few days after the shooting by United States Marshalls. His *Miranda* and military rights were administered by an NCIS investigator and he waived those rights.

---

[4] Cori had served in the Army and was familiar with weapons.

Appellant did admit to shooting at the vehicle but claimed he intended to shoot over the top of Sara's vehicle to defuse the verbal dispute.[5] Pursuant to a search warrant, Appellant's off-base apartment was searched. Officers found bullets, a red hoodie the witnesses had described, and jewelry he wore on the night of the shooting. They did not, however, find the gun.

The detective assigned to the case in Denton traveled to Yuma with a Texas Ranger to interview Appellant where the focus of the investigation became locating the gun used by Appellant on the night of the shooting. Appellant admitted he was at the party on the night of the shooting and shot at Sara's vehicle but claimed her death was an accident. He insisted he had no knowledge of the gun's whereabouts. He suggested that the detective contact one of his friends who may have taken possession of the weapon. His friend, Austin Dibiase, was eventually located. He testified that he purchased the gun from Appellant after the shooting.

At trial, several witnesses identified Appellant as the shooter. Appellant testified and admitted firing a 9 mm gun in the direction of Sara's vehicle but denied having any intent to cause her death. Instead, he said he was attempting to shoot over her vehicle in an attempt to "mitigate" the verbal dispute and because he felt he was in danger since he believed the passenger in the backseat of Sara's vehicle also had a firearm.

---

[5] The evidence showed that the vehicle Sara was driving was lower than the Honda Pilot being driven by Appellant which meant he would have had to aim downward to shoot her vehicle.

4

ISSUE ONE—ADMISSION OF PHOTOGRAPHS

Appellant contends the trial court abused its discretion in admitting a photograph showing him wearing a red hoodie with the words "Fuck Everybody" printed on it. According to Appellant, the hoodie was unrelated to the shooting. He also complains that a photograph showing him and his friend posing with guns was improperly admitted. He argues the photographs depict "bad acts" admitted in violation of Rule 404(b) of the Texas Rules of Evidence. The State counters that the photographs do not depict bad acts rendering Rule 404(b) inapplicable.[6] The State maintains that testimony describing the photographs was admitted elsewhere without objection rendering error, if any, in the admission of the photographs harmless.

Evidence is relevant if it tends to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. TEX. R. EVID. 401. To be admissible, evidence must be relevant. TEX. R. EVID. 402. Even if evidence is relevant, the trial court may exclude the evidence "if its probative value is substantially outweighed by a danger of unfair prejudice." TEX. R. EVID. 403. Evidence is unfairly prejudicial when it has an undue tendency to suggest an improper basis for reaching a decision. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g). Additionally, evidence from the "same transaction" in the State's case-in-chief that is intrinsic to the offense is not an extraneous offense or bad act.[7] As such, it

---

[6] To constitute an extraneous offense and implicate Rule 404(b), the evidence must show that a crime or bad act was committed and that the defendant was connected to it. *Blue v. State*, Nos. 02-17-00265-CR, 02-17-00266-CR, & 02-17-00267-CR, 2018 Tex. App. LEXIS 10910, at *8 (Tex. App.—Fort Worth Dec. 31, 2018, no pet.) (mem. op., not designated for publication).

[7] Same-transaction contextual evidence is evidence reflecting the context in which a criminal act occurred. *Sparks v. State*, 02-12-00177-CR, 2014 Tex. App. LEXIS 8392, at *5-6 (Tex. App.—Fort Worth July 31, 2014, no pet.) (mem. op., not designated for publication). Events do not occur in a vacuum and a

5

is admissible without the State having to provide reasonable pretrial notice of its intent to introduce such evidence. TEX. R. EVID. 404(b)(2); *Worthy v. State*, 312 S.W.3d 34, 39 (Tex. Crim. App. 2010).

The admission of photographs is a matter within the sound discretion of the trial court. *Shuffield v. State*, 189 S.W.3d 782, 786 (Tex. Crim. App. 2006). As long as the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. *Montgomery*, 810 S.W.2d at 391. Generally, photographs are admissible if testimony about the matters that the photographs depict would be admissible and if the probative value is not substantially outweighed by the prejudicial effect. *See Threadgill v. State*, 146 S.W.3d 654, 671 (Tex. Crim. App. 2004). *See Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007), *cert denied,* 553 U.S. 1080, 128 S. Ct. 2872, 171 L. Ed. 2d 813 (2008); *Lopez v. State*, No. 14-15-00887-CR, 2017 Tex. App. LEXIS 2715, at *7 (Tex. App.—Houston [14th Dist.] March 30, 2017, pet. ref'd) (mem. op., not designated for publication).

State's Exhibit Number 18 depicts Appellant wearing the red hoodie in question. One of the detectives from Texas testified without objection that he retrieved a selfie from Appellant's cell phone showing him wearing the red hoodie and sitting in the driver's seat of a vehicle on New Year's Eve 2015. A detective with the Yuma Police Department, who executed the search warrant, testified that the red hoodie in question was found at Appellant's apartment. During cross-examination, Appellant himself confirmed that the

jury is entitled to hear what occurred immediately before and after the offense in order to realistically evaluate the evidence. *Smith v. State*, 316 S.W.3d 688, 699 (Tex. App.—Fort Worth 2010, pet. ref'd).

red hoodie found in his apartment after the shooting was the same one he wore on the night of the shooting.

Witness accounts of the shooting indicated that the shooter was wearing a red article of clothing and those witnesses testified at trial to that fact without objection. Therefore, the photo in question only depicts what Appellant was wearing on the night of the shooting. As such, the exhibit was relevant and admissible. Wearing a red hoodie, even with profane words printed on it, is not an extraneous offense or a bad act rendering an analysis under Rule 404(b) of the Texas Rules of Evidence unnecessary.

The second questioned photograph, State's Exhibit Number 29, depicts Appellant and one of his friends posing with guns. Testimony at trial showed that Appellant lawfully obtained that gun from the spouse of a fellow Marine in a private sale. Posing with a gun is not, in and of itself, an extraneous offense or a bad act. *See Robinson v. State*, 236 S.W.3d 260, 269-70 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Accordingly, an analysis under Rule 404(b) would be unnecessary.

In addition, one of the detectives testified, without objection, to an image taken on the date of the shooting showing Appellant holding a black semi-automatic weapon which appeared to be the gun used in the shooting. Furthermore, Appellant admitted during cross-examination that the photograph was taken on January 1, 2016, after the shooting had occurred. As such, State's Exhibit Number 29 was circumstantial evidence that

Appellant was in possession of a handgun when the fatal shots were fired that night. Thus, the exhibit was relevant and admissible.[8]

Additionally, Appellant has not demonstrated prejudice by admission into evidence of either exhibit. Consequently, we agree with the State that Rule 404(b) of the Texas Rules of Evidence does not govern admission of either exhibit. *See Sargeon v. State*, 01-11-00146-CR, 2012 Tex. App. LEXIS 1857, at *8 (Tex. App.—Houston [1st Dist.] March 8, 2012, no pet.) (mem. op., not designated for publication) (noting that when possession of a gun does not constitute a criminal or bad act, Rule 404(b) does not apply). As such, the trial court did not abuse its discretion in admitting either exhibit into evidence because each photograph was independently relevant to the offense the State was prosecuting and neither exhibit constituted a "bad act." Issue one is overruled.

ISSUE TWO—MISTRIAL

By his second issue, Appellant asserts the trial court abused its discretion in failing to grant a mistrial when the prosecutor cross-examined him about his gang affiliation. The State responds that the trial court's immediate instruction to the jury to disregard the question resolved the issue. We agree with the State.

A mistrial is an extreme remedy for a narrow class of highly prejudicial and incurable errors during the trial process. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009); *Washington v. State*, No. 02-13-00050-CR, 2015 Tex. App. LEXIS 1419, at *29 (Tex. App—Fort Worth Feb. 12, 2015, no pet.) (mem. op., not designated for

---

[8] Any alleged error in the admission of the photograph was cured where the same evidence was admitted without objection. *Hill v. State*, 303 S.W.3d 863, 876 (Tex. App.—Fort Worth 2009, pet. ref'd).

8

publication). It is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1070, 120 S. Ct. 1680, 146 L. Ed. 2d 487 (2000). Only when it is apparent that an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant is a trial court required to grant a mistrial. *Bauder v. State*, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996), *overruled on other grounds*, *Ex parte Lewis*, 219 S.W.3d 335, 337 (Tex. Crim. App. 2007). The denial of a motion for mistrial is reviewed for abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Grotti v. State*, 209 S.W.3d 747, 776 (Tex. App.—Fort Worth 2006), *aff'd*, 273 S.W.3d 273, 283-84 (Tex. Crim. App. 2008).

Appellant's arguments attack the prosecutor's tactics during trial as being overly zealous, resulting in the denial of a fair trial. During cross-examination, Appellant was asked questions about wearing the color red to which he admitted it was his favorite color. The prosecutor then followed up, "Are you familiar with the gang of Bloods?" After Appellant answered that he was, defense counsel objected "to this line of questioning." The trial court sustained the objection and granted counsel's request to instruct the jury to disregard the question. Thereafter, defense counsel moved for a mistrial which the trial court denied.

In reviewing whether a trial court abused its discretion in denying a request for a mistrial, we look at (1) the severity of the misconduct; (2) the measures adopted to cure the misconduct; and (3) the certainty of conviction absent the misconduct. *Hawkins*, 135 S.W.3d at 77. We believe the prosecutor's question was not severe nor did it present

9

incurable prejudice. The trial court immediately sustained defense counsel's objection and instructed the jury to disregard the question and, in the absence of any evidence to the contrary, we presume the jury obeyed the trial court's instruction. *Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011). The question was an isolated incident with an immediate curative instruction. Regarding the certainty of conviction, the evidence was overwhelming that Appellant shot and killed Sara. He admitted firing the fatal shot although he claimed his intention was to de-escalate a verbal altercation between the passengers of his vehicle and those in Sara's vehicle. The physical evidence contradicted his assertion that he fired over Sara's vehicle because the vehicle he was driving sat higher than her sedan and he would have had to aim in a downward direction to inflict the fatal shot. Additionally, during his interviews with detectives, Appellant professed not to know the whereabouts of his gun. The evidence showed, however, that he had sold it to his friend shortly after the shooting.

Given the evidence of guilt and the trial court's immediate instruction to disregard the prosecutor's question, we find the trial court did not abuse its discretion in denying Appellant's motion for mistrial. Issue two is overruled.

CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.

10