

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00146-CR

Eric Xavier **MENDOZA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CR-5141
Honorable Philip A. Kazen Jr., Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Catherine Stone, Chief Justice
            Marialyn Barnard, Justice
            Luz Elena D. Chapa, Justice

Delivered and Filed:  June 12, 2013

AFFIRMED

Appellant Eric Xavier Mendoza appeals his conviction for capital murder.  Mendoza pled

not guilty.  However, the jury convicted him of capital murder, and the trial court sentenced him

to life imprisonment without the possibility of parole.[1]  On appeal, Mendoza argues: (1) the trial

court erred in denying his motion to suppress a pretrial identification; (2) the trial court erred in

admitting extraneous evidence that Mendoza was a member of the Mexican Mafia; and (3) the

---

[1] Because the State did not seek the death penalty, Mendoza was sentenced to life imprisonment without parole, as is mandatory upon conviction of a capital felony.  *See* TEX. PENAL CODE ANN. § 12.31(b)(2) (West 2011).

trial court erred in admitting extraneous evidence that Mendoza was an "ex-con" and "locked up" pending trial. We affirm the trial court's judgment.

## BACKGROUND

On February 21, 2009, two groups of people fought in a bar, resulting in the deaths of two men, Christopher Baxter and Jason Garay.

According to trial testimony, one group was celebrating Ashley Escobedo's birthday,[2] who was a bartender at the bar, while the other group was celebrating Wendy Galindo's birthday, Mendoza's girlfriend at the time. The bar was crowded that night. The manager of the bar, Evangeline de los Santos, testified she saw minors continuously entering the bar, and decided to close the bar early, around midnight. As she began to lead people out, she heard a fight begin on the patio.

Crystal Flores was one of the guests at the bar celebrating Ashley's birthday. She was married to Joe Pierce, Ashley's cousin. Other guests at the party included Christopher and Jason (the victims), and Crystal's sister Tiffany. Crystal testified she and Jason went outside, and the rest of Ashley's group followed shortly thereafter. As they tried to exit through an outside gate, a group of men followed them. One of these men, Mario Ramirez, pushed Crystal out of the way to get to Jason. Ramirez grabbed Jason and threw him onto a picnic table. Crystal jumped on Ramirez's back and tried to choke him. Crystal testified she saw Jason running away, and shortly thereafter, heard gunshots. As she turned toward the direction of the gunshots, Crystal testified Mendoza put a gun to her face and pulled the trigger, but the gun misfired. A few minutes later, she saw her friends Jason and Christopher lying dead on the ground. Crystal

---

[2] According to trial testimony, some of the members in Ashley's group, including the victims in this case Jason and Christopher, were associated with the "Latin Kings," a San Antonio gang.

testified Mendoza was the only person she saw with a gun that night. She later picked his picture out of a photo lineup.[3]

Joe Pierce, Crystal's husband, testified he was friends with both Jason and Christopher. Before Ashley's group moved outside, Joe was on the patio by himself, drinking and looking into the bar. Joe testified a man inside the bar kept pointing at him, so Joe went inside to confront him. The man, Daniel Aguilar, told Joe he thought he was looking at his wife. Joe denied the accusation and went back outside. Shortly thereafter, Joe and the rest of Ashley's group decided to leave the bar, but Mendoza and the other people in his group blocked the exit. At that point, Joe testified his aunt, Anna Escobedo, Ashley's mother, intervened. She told Ramirez and his friends to go back inside, but they refused. Joe testified Ramirez grabbed Jason and threw him down. Meanwhile, two other men rushed at Joe. One of the men hit Joe with a beer bottle. Minutes later, Joe heard two gunshots, but did not see who fired them.

Tiffany Flores, Crystal's sister, identified Mendoza as the man who attempted to shoot Crystal in the face. In her testimony, Tiffany explained how the fight started. She mentioned that at one point in the night, Jason was escorting her to the restroom when they overheard a table of strangers, later identified as Mendoza's group, making rude comments and making fun of Jason's long and curly hair. Tiffany said she and Jason walked around the bar to avoid them. However, later that night, when they tried to leave the bar, the same group of men blocked the exit. The men ran toward Tiffany's group and a fight ensued. Tiffany heard two gunshots, but did not see who was shooting. At trial, Tiffany stated that although she was not positive, Mendoza "appeared to look like" the individual who attempted to shoot Crystal.

---

[3] Shortly before trial, Crystal told the prosecutors she "didn't want" to make an identification of the man who pointed a gun at her face. Crystal stated she picked Mendoza from the photo lineup because: (1) she had seen an eight-by-ten picture of Mendoza in Detective Jesse Salame's folder shortly before he showed her the six-photo array; and (2) Mendoza was the only individual in the photo array whom she recognized from the bar that night. However, at trial, Crystal reiterated Mendoza was the man who pointed a gun at her and pulled the trigger.

Felipe Maldonado was one of the individuals in Mendoza's group the night of the shootings. Maldonado testified he was Mendoza's friend and a member of the Mexican Mafia. Maldonado was in federal custody at the time he testified at trial, having pled guilty to conspiracy for "collecting the dime," which he explained was a percentage the Mexican Mafia charged drug dealers for protection. Maldonado testified about the ranks of the Mexican Mafia members, identifying himself as a lieutenant in charge of a quadrant in San Antonio. He testified Mendoza was also a member of the Mexican Mafia and had the rank of sergeant. Maldonado testified no one in the Mexican Mafia was allowed to cooperate with law enforcement officers. If they did, the penalty was a "green light" to kill the cooperating person. Maldonado stated he was now an ex-member of the Mexican Mafia because he violated the non-cooperating rule by testifying at Mendoza's trial.

Maldonado testified Mendoza was living with him at the time of the shootings. On the night in question, they went to the bar because it was Mendoza's girlfriend's birthday. There was a standing order at the time that Mexican Mafia members must go armed to clubs and bars, but Maldonado testified he was not armed that night. He testified Ramirez was not a Mexican Mafia member, but a common friend of the group. Maldonado testified Aguilar was the man who thought Joe was staring at his girlfriend. Maldonado told jurors that on the night of the shootings he saw another member of his group, a man known as "Animal," in a confrontation with a young man with "curly hair." When Maldonado saw Mendoza walking out to the patio, he followed him because he knew Mendoza had a short temper. Maldonado testified that once outside, he saw Ramirez arguing with an older woman. He tried to intervene, but the woman stopped him. Maldonado then began fighting with one of the young men. At one point, Maldonado saw a man in a hoodie who appeared to be reaching for a gun. Maldonado testified he then dropped to the ground and heard two gunshots. When he looked up, he saw Mendoza

shooting at two men who were running away. Maldonado testified he also saw Mendoza shoot at a girl; he saw her fall. He said after the shooting his group went back to Mendoza's girlfriend's house. Maldonado testified Aguilar offered to dispose of the revolver used in the shootings.

Detective Jesse Salame, lead detective in the case, testified that when he interviewed Maldonado, Maldonado was reluctant to talk to him because he was a member of the Mexican Mafia. However, Maldonado told Detective Salame that Mendoza shot the men at the bar that night. Detective Salame also testified he showed Crystal a photo spread that included a picture of Mendoza. He testified that when her eyes focused on Mendoza's photo, she was visibly shaken and tearful; she then pointed to Mendoza's photo.

Finally, the State's gang expert, Deputy Anthony Rodriguez, testified that both Mendoza and Maldonado were known members of the Texas Mexican Mafia, and that Mafia members had a rule not to cooperate with law enforcement officials.

Before trial, Mendoza filed a motion to suppress Crystal's pretrial identification. A pretrial hearing was held, where the court heard live testimony from only Detective Salame, to whom Crystal had made the pretrial identification. The court also received and reviewed a written statement from Crystal. At the hearing, Detective Salame testified that after he had identified suspects in the bar murders, and Maldonado told him Mendoza was the shooter, he showed a photo spread to Crystal that included Mendoza's picture. He testified he did not show her any other photos of Mendoza before showing her the photo lineup, nor did he give her any hints as to which person in the lineup was the suspect. After viewing the photo spread, Crystal pointed to Mendoza and told Detective Salame he was the one who pointed a gun at her face and shot at her, and that he was the man who shot Jason and Christopher.

While cross-examining Detective Salame at the hearing, Mendoza's attorney asked him whether he had shown Crystal another picture of Mendoza before the photo spread. Detective Salame denied the allegation. The trial court denied the motion to suppress Crystal's pretrial identification.

The jury found Mendoza guilty of capital murder, and the trial court sentenced him to life imprisonment without the possibility of parole. Mendoza timely appealed.

## ANALYSIS

On appeal, Mendoza argues: (1) the trial court erred in denying his motion to suppress the pretrial identification; (2) the trial court erred in admitting extraneous evidence that Mendoza was a member of the Mexican Mafia; and (3) the trial court erred in admitting extraneous evidence that Mendoza was an "ex-con" and "locked up" pending trial.

### *Motion to Suppress*

Mendoza argues the trial court erred in denying his motion to suppress the pretrial identification made by Crystal Flores.[4] We disagree.

### *Standard of Review*

We review the trial court's denial of a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Aviles v. State*, 385 S.W.3d. 110, 113 (Tex. App.—San Antonio 2012, no pet.). A trial court's determination of historical facts will be given almost total deference, while the trial court's application of the law will be reviewed de novo. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000); *Aviles*, 385 S.W.3d at 113. When the trial court does not issue findings of fact and none are

---

[4] In his brief, Mendoza contends "the trial court erred in denying [his] motion to suppress the identification." However, Mendoza then cites law regarding the admissibility of an in-court identification. Mendoza's motion to suppress dealt only with Crystal Flores's pretrial identification. Then, at trial, Mendoza's counsel objected to Crystal's in-court identification "on the basis of [the] motion." Therefore, we will only consider Mendoza's argument as it relates to the pretrial identification.

requested, as in this case, we imply findings that support the trial court's ruling if the evidence, viewed in the light most favorable to the ruling, supports those findings. *See Valtierra*, 310 S.W.3d. at 449. "[T]he trial judge is the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). A trial court's ruling on a motion to suppress will be upheld if there is any valid theory of law applicable to the case, even if the trial court did not base its decision on that theory. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

### *Application*

A pretrial hearing was held on Mendoza's motion to suppress. In that hearing, the trial court heard live testimony from only one witness, Detective Jesse Salame, to whom Crystal had made the pretrial identification. The trial court also admitted into evidence a written statement from Crystal.

Mendoza argues evidence of Crystal's pretrial identification should not have been admitted because it was made after she saw an eight-by-ten picture of Mendoza in Detective Salame's folder immediately before she picked out Mendoza's photograph in the six-photo array.[5] However, Crystal gave such testimony at trial, and therefore, the trial court did not hear this testimony when it ruled on the motion to suppress. This court must review the trial court's ruling on the motion to suppress in light of what was before that court at the time the ruling was made. *See Rodgers v. State*, 525, 528–29 (Tex. Crim. App. 2006). Therefore, Crystal's statements made during trial have no bearing on this court's review of the trial court's ruling on the motion to suppress.

---

[5] At trial, Crystal denied Detective Salame showed her the eight-by-ten picture of Mendoza. She stated she saw the picture when Detective Salame opened his folder, prior to showing her the six-photo array.

Furthermore, during the pretrial hearing, Detective Salame specifically stated he did not show Crystal any other photos of Mendoza before showing her the photo lineup, nor did he give her any hints as to which person in the lineup was the suspect. Instead, Detective Salame testified that when Crystal came to Mendoza's photo in the six-photo lineup:

> [I]t was as if she started to relive the moment in her -- right in front of me she began to tremble, she shook, she got very nervous as she started to shake. And she pointed him out and said, That's him. That's the one. He's the one that had the gun. He's the one that pointed the gun at me.

While cross-examining Detective Salame at the hearing, Mendoza's trial counsel alleged Detective Salame had shown Crystal a picture of Mendoza before he showed her the six-photo array. Detective Salame denied the allegation.

The trial judge is the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). Therefore, we hold it was within the trial judge's discretion to believe Detective Salame's testimony, and impliedly find that no improperly suggestive event occurred before Crystal identified Mendoza in the photo lineup. Accordingly, we overrule Mendoza's issue.

### Admission of Extraneous Offense Evidence

Mendoza next argues the trial court erred in allowing into evidence extraneous evidence regarding his affiliation with the Mexican Mafia. The trial court included a limiting instruction in the charge, instructing the jury that "any testimony before you in this case regarding the defendant having any alleged gang affiliation was allowed for a contextual purpose and has no bearing upon assessing the defendant's guilt, if any."

Mendoza also contends the trial court erred in allowing testimony that Mendoza was an "ex-con" and was "locked up" pending trial. Mendoza specifically points to statements made by Maldonado, one of the State's witnesses, referring to Mendoza and himself as "ex-cons" during

his testimony, and stating Mendoza had been "locked up." In the jury charge, the trial court reminded the jurors they had been instructed during trial to disregard testimony from the witness stand about "ex-cons" and about Mendoza being "locked up."

### *Standard of Review*

We review a trial court's evidentiary ruling under an abuse of discretion standard. *Hines v. State*, 383 S.W.3d 615, 624 (Tex. App.—San Antonio 2012, pet. ref'd) (citing *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012)); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). We also review a trial court's ruling on a motion for mistrial under an abuse of discretion standard. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). A trial court abuses its discretion only when its decision is outside the zone of reasonable disagreement. *Hines*, 383 S.W.3d at 625 (citing *Tienda*, 358 S.W.3d at 638). "[I]f the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed" regardless of the reason for the trial court's ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

### *Extraneous Evidence Regarding the Mexican Mafia and Mendoza's Affiliation*

Mendoza complains the trial court should not have admitted evidence that he was a member of the Mexican Mafia. Although evidence of an extraneous offense is normally inadmissible pursuant to Rule 404(b) of the Texas Rules of Evidence, evidence of an extraneous offense is admissible as same transaction contextual evidence to show the context in which a criminal act occurred. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). "This evidence is considered 'res gestae,' under the reasoning that events do not occur in a vacuum, and the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that it may realistically evaluate the evidence." *Id.* This type of evidence results when an extraneous matter is so intertwined with the State's proof of the

charged offense that avoiding reference to it would make the State's case incomplete or difficult to understand. *Smith v. State*, 316 S.W.3d 688, 699 (Tex. App.—Fort Worth 2010, pet. ref'd). "Such evidence imparts to the trier of fact information essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven." *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993).

### *Preservation of Error*

During oral argument, Mendoza's appellate counsel stated every witness at trial testified regarding Mendoza's affiliation with the Mexican Mafia, and his trial counsel objected every time this testimony was admitted. A review of the record does not support this assertion.

Mendoza argues he made a running objection prior to opening statements to preserve error as to all witness testimony regarding his gang affiliation. Mendoza's trial counsel stated "please let the record note my objection to any evidence of gang membership now or at any time throughout the trial." The trial court responded "okay." We hold this statement by the trial court does not constitute an adverse ruling. *See Ramirez v. State*, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991) (holding an adverse ruling "must be conclusory; that is, it must be clear from the record the trial judge in fact overruled the defendant's objection or otherwise error is waived.").

Mendoza next objected to the admission of gang affiliation evidence during the testimony of certain witnesses, primarily Felipe Maldonado and Anthony Rodriguez, the State's gang expert. Prior to the testimony of each of these witnesses, the trial court granted Mendoza a running objection as to their testimony about Mendoza's affiliation with the Mexican Mafia.

However, Mendoza did not make a proper Rule 404(b) objection to the testimony of another witness, Detective Salame, who testified Maldonado was a member of the Mexican Mafia and was reluctant about "disclosing the identity of a fellow member," that is, Mendoza. Although Mendoza objected to this testimony, he stated the testimony was speculative.

Therefore, we hold Mendoza's objection does not comport with his complaint on appeal. *See Bennett v. State*, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007) (noting to preserve complaint, party must convey substance of complaint to trial judge); *see Phelps v. State*, 999 S.W.2d 512, 519 (Tex. App.—Eastland 1999, pet. ref'd) (holding appellant's objection on speculation did not preserve error for his Rule 404(b) challenge on appeal); *see Dreyer v. State*, 309 S.W.3d 751, 755 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (noting defendant waived review of error when objection at trial was on different basis than his complaint on appeal); *see also* TEX. R. APP. P. 33.1(a) (noting to preserve error on appeal, record must show appellant made timely and specific objection that stated grounds for ruling).

### *Error*

Assuming arguendo Mendoza preserved error on the admission of evidence of his affiliation with the Mexican Mafia, we now address whether the trial court erred in allowing into evidence testimony that Mendoza was a member of the Mexican Mafia.

The State contends Mendoza's affiliation to the Mexican Mafia provided a context for the crime—that is, the evidence showed how a small personal encounter turned into a group attack. We disagree. Altercations and fights in bars happen routinely, not only when members of gangs are involved. In fact, when the prosecutor was explaining to the trial court why the testimony from the State's gang expert, Anthony Rodriguez, was necessary to explain the shooting, the trial judge stated "I mean, it could have, just as arguably, been two macho groups butting heads, as opposed to a gang unit." The State's argument would have more merit if it was trying to prove the shootings occurred because the victims were members of the Latin Kings and Mendoza was a part of the Mexican Mafia—that is, that the fight ensued due to some form of "gang rivalry." But the State, in its opening statement, stated: "This was not one gang versus another. This was not a sanctioned, ordered hit. This was a bar fight turned deadly." Therefore, we hold the trial

court abused its discretion in admitting the extraneous evidence about Mendoza's affiliation with the Mexican Mafia, as it did not provide context for the crime.

Next, the State argues the evidence was necessary to demonstrate why witnesses like Crystal Flores were reluctant to testify. Although it is true that extraneous evidence may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" or other relevant matters, *see* TEX. R. EVID. 404(b), we hold this particular evidence was not necessary in this case. Witnesses may be reluctant or even afraid to testify for many reasons, including *but not exclusively* when the suspect is a member of a gang. The State cites *Ortiz v. State*, 93 S.W.3d 79 (Tex. Crim. App. 2002) for the proposition that inconsistent statements by witnesses provide a reason to admit evidence that a defendant is a member of a violent gang. In *Ortiz*, the court held the evidence that appellant was a member of a violent gang tended to rebut impeachment of the State's witnesses because it explained inconsistencies in their statements were "motivated by their fear." *Id.* at 94. However, this was only one of several reasons the court listed on how the extraneous evidence was relevant to show appellant's guilt of the crime. *See id.* Moreover, Mendoza's gang affiliation was not offered by the State exclusively to rebut any impeachment of Flores's testimony. Accordingly, we hold that in the context of this case, the fear of a witness to testify, by itself, did not warrant the admission of Mendoza's affiliation with the Mexican Mafia.

Finally, the State argues Mendoza's gang affiliation helped explain Mendoza's motive for the murders. The State argues the evidence shows Mendoza acted to support his fellow gang members, and the standing order that all gang members carry a gun at a bar explained why Mendoza was carrying a gun that night.[6] Again, the State in its own opening statement

---

[6] The State argues the defense repeatedly emphasized that one of the victims, Jason, was carrying a gun in a holster, and in raising the issue of self-defense, Mendoza opened the door for the State to bring in evidence about the

mentioned this altercation was not "one gang versus another." Therefore, the fact that Mendoza was a member of the Mexican Mafia does not explain why he shot the two victims in this case. It is not uncommon for people to get involved in fights to help other friends, not just because they are members of a gang. Furthermore, gang members are not the only individuals who carry guns in bars.

Therefore, we hold the State did not meet its burden of proving the extraneous evidence of Mendoza being a member of the Mexican Mafia was so intertwined with the shooting that the evidence was essential for the jury to understand the context and circumstances surrounding the incident. *See Camacho*, 864 S.W.2d at 532. We hold the absence of this contextual evidence would not "make the State's case incomplete or difficult to understand." *See Smith*, 316 S.W.3d at 699. Therefore, we hold the trial court abused its discretion in admitting such evidence.

### *Harm Analysis*

Although the trial court erred in admitting the extraneous offense evidence, we hold such error was harmless and does not entitle Mendoza to a reversal. The error complained of by Mendoza is nonconstitutional error, and is therefore governed by Rule 44.2(b) of the Texas Rules of Appellate Procedure, which states that nonconstitutional error must be disregarded unless this court finds it affected the defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b). The improper admission of evidence is not reversible, i.e. does not affect a defendant's substantial rights, "if the same or similar evidence is admitted without objection at another point in the trial." *Lacaze v. State*, 346 S.W.3d 113, 122 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (quoting *Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2004, pet.

---

Mexican Mafia. The State cites *Vasquez v. State*, 67 S.W.3d 229 (Tex. Crim. App. 2002) for the proposition that "evidence of membership in a violent gang may [] be introduced to rebut a theory of self-defense." However, in *Vasquez*, evidence that the appellant was a member of the Mexican Mafia was admitted because it provided a context for the crime—that the shooting in that case occurred during a robbery to "collect the dime," a percentage the Mafia charged drug dealers for protection. *Id.* at 239–40. We previously rejected the argument that the evidence in this case could be admitted to explain context.

ref'd)); *see Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986) (noting where other evidence at trial is admitted without objection and proves same fact that inadmissible evidence sought to prove, this renders inadmissible evidence harmless).

As noted earlier, Mendoza did not make a proper Rule 404(b) objection to the testimony of Detective Salame, who testified Maldonado was a member of the Mexican Mafia and was reluctant about "disclosing the identity of a fellow member"—Mendoza. Although Mendoza objected to this testimony, he stated the testimony should not be admitted because it was speculative. Therefore, Mendoza's objection did not comport with his complaint on appeal. *See Phelps*, 999 S.W.2d at 519. Furthermore, Detective Salame's testimony proved the same facts as the testimony Mendoza now complains of, rendering any error in admitting the extraneous evidence harmless. *See Anderson*, 717 S.W.2d at 628.

Moreover, error in admitting evidence of Mendoza's affiliation with the Mexican Mafia was harmless in light of the evidence presented in this case. A harm analysis should assess whether the defendant's substantial rights were affected—that is, whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). In the case of erroneous admission of evidence, as in this case, we can "consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error." *Id.* at 577–78.

In this case, the State emphasized in its opening statement this case was not "one gang versus another." Therefore, the State's theory did not benefit from the introduction of gang affiliation. Moreover, the jury heard testimony from Maldonado, who was Mendoza's roommate

and friend. Maldonado testified he saw Mendoza shoot at a girl and at two men who were running away. Furthermore, Crystal Flores testified Mendoza was the man who shot at her and the only man who was seen with a gun that night. Also, there was no emphasis in the State's closing argument regarding gang affiliation. Therefore, we hold that in light of the evidence presented at trial, the trial court's improper admission of evidence of Mendoza's affiliation with the Mexican Mafia did not have a substantial and injurious effect on the jury's verdict. *See id.* at 577. Accordingly, we overrule Mendoza's issue.

### *Extraneous evidence that Mendoza was an "ex-con" and "locked up"*

Finally, Mendoza contends the trial court erred in admitting testimony that Mendoza was an "ex-con" and "locked up" pending trial. Mendoza specifically points to statements made by Maldonado, referring to Mendoza and himself as "ex-cons," and stating that Mendoza had been "locked up."

In both instances, Mendoza's counsel objected to Maldonado's statements and requested a mistrial. Both times, the trial court instructed the jury to disregard such statements and denied Mendoza's request for mistrial. Furthermore, the trial court reminded the jury in the charge that it had been instructed throughout the trial to disregard testimony from the witness stand about "ex-cons" and about Mendoza being "locked up."[7]

We hold that any error in admitting Maldonado's testimony that Mendoza was "locked up" was harmless, because the same evidence came before the jury, at different points during his testimony, without an objection. *See Anderson*, 717 S.W.2d at 628. Furthermore, the trial court issued a limiting instruction for the jury to disregard such statements. It is presumed that jurors

---

[7] Mendoza argued that Maldonado's testimony stating he was "locked up" implied Mendoza was in jail awaiting trial rather than free on bond, minimizing his presumption of innocence. Because Mendoza did not make this argument to the trial court, he has waived this argument on appeal. *See Cameron v. State*, 241 S.W.3d 15, 21 (Tex. Crim. App. 2007); *see also* TEX. R. APP. P. 33.1.

followed such an instruction. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *see also Barney v. State*, 698 S.W.2d 114, 124 (Tex. Crim. App. 1985) (holding trial court's instruction for jury to disregard blurted testimony that appellant was ex-con cured any potential harm); *Thrift v. State*, 176 S.W.3d 221, 223 (Tex. Crim. App. 2005) (noting that when trial court issues clear, determinative, and unambiguous instruction limiting jury's consideration of evidence, appellant must rebut presumption jury followed instruction).

Accordingly, we hold the trial court did not abuse its discretion in denying Mendoza's motion for a mistrial.

### CONCLUSION

Based on the foregoing, we affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish