

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| DARIUS LATREA HOWARD AKA DARIUS HOWARD, | § | No. 08-12-00154-CR |
| | § | |
| Appellant, | § | Appeal from the |
| | § | |
| v. | § | 213th District Court |
| | § | |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| | § | |
| Appellee. | § | (TC#1221982D) |
| | § | |

**O P I N I O N**

Appellant, Darius Latrea Howard, appeals his conviction for the offense of murder.[1]  We affirm.

**BACKGROUND**

On November 21, 2010, Alysha Tann engaged in a brief fight with Appellant's girlfriend, Nicole Bogan, at the Heather Glen Apartments in Arlington.  Others who were present in the area began fighting without weapons, but someone who was a distance from the brawl shot repeatedly into the crowd.  One of the bullets struck Tann in the central area of her back and she died.  Appellant was charged by indictment for the offense of murder.  Police determined that Appellant was the registered owner of a brown Cadillac.

---

[1]  This case was transferred from the Court of Appeals in Fort Worth, and we decide it in accordance with the precedent of that court. TEX. R. APP. P. 41.3.

Multiple witnesses who were present during the shooting testified at trial. Arvis Vaughner, who was shot in his leg that evening, drove Tann to a hospital but did not see the gunman. Ron Pruitt was present when the fights and shooting occurred. Pruitt testified he had broken up the brawl and then heard gunshots. Pruitt hid behind a gate after hearing the gunshots, and could see everything because streetlights lighted the area. When he looked to see from where the shots were being fired, Pruitt saw a person he knew as "D. Howard." At trial, Pruitt identified Appellant as the person he knows as "D. Howard," testified that Appellant "fired like he didn't have no mind, like – like he didn't care," and proceeded to demonstrate how Appellant held and pointed the gun at the crowd and fired five to six shots. Although he had never met Appellant, Pruitt had previously seen Appellant at parties and while Appellant performed at a nightclub.

Bogan testified that she saw Appellant's Cadillac vehicle earlier in the evening at the apartment complex but did not see who had fired the gun. When Bogan and her friends left the area after the shooting, Bogan observed Appellant's vehicle speed up behind them on the main street by the apartments but could not tell who was driving the vehicle. When Bogan and Appellant spoke by telephone after the shooting, Appellant informed Bogan that he needed to dispose of a gun. Bogan initially went to her "granny's" house, but later left with Appellant and his friend, "C.J.," and spent the night at the home of C.J.'s girlfriend, where they consumed drugs. Bogan testified that while she was sleeping she overheard Appellant say he was going to urinate on his hands, an act that she and Appellant had learned about while watching a crime show on television.[2]

On cross-examination, Bogan adamantly denied that she ever informed Appellant's

---

[2] Although not expressly stated or explained by Bogan's testimony, the implication of her testimony appears to be that the described act may aid in the removal of unidentified substances.

defense counsel that Appellant didn't shoot into the crowd, and asserted that she had only stated to him that she did not see Appellant "do it." In response to being asked whether she had asked Appellant why he had shot Tann, Bogan stated that she had asked Appellant that question and Appellant would deny that he had committed the act. When defense counsel asked Bogan if she was testifying because she was mad at Appellant, Bogan stated, "Me telling the truth has nothing to do with me being mad at D. Howard." Bogan admitted that prior to the commencement of trial, she posted on a social media site, "I'm pretty sure if somebody gave you an STD you couldn't get rid of . . . [y]ou'll try and kill them." Bogan described the comment as a "general thought," and confirmed that she believed Appellant had given her a sexually-transmitted disease.

Craig Gadley, Appellant's roommate, testified that Appellant owned a semi-automatic gun. Appellant and his roommate, Craig Gadley, were at their apartment on November 21, 2010, when Appellant informed Gadley that he was leaving because somebody was "getting jumped," or was going to fight, but Appellant did not tell Gadley his destination.[3] Gadley testified that Appellant left with a pistol, and stated that Appellant owned a semi-automatic gun. When Appellant later returned to the apartment with the weapon, he told Gadley that he needed to dispose of the gun but never explained the reason for needing to do so. Gadley did not know if the gun was loaded or empty because he did not see the clip for the weapon. Gadley testified that he and Appellant disposed of the gun by taking it to someone Appellant knew, and later picked up Bogan, and went to Gadley's girlfriend's home.[4]

---

[3] In the jury's presence, the State elicited Gadley's testimony that he had been subpoenaed from a federal correctional institution and was facing two federal counts of sex trafficking, but had been informed by the State that in exchange for his truthful testimony, the State would write a letter to the United States Attorney's Office stating that Gadley had cooperated in this case. Gadley acknowledged that the State had no control over the federal government's disposition of offenses. On cross-examination, Gadley acknowledged that he was presently on deferred-adjudication status for a controlled substance offense.

[4] Although Bogan testified that she did not know if Appellant and C.J. shared an apartment, the testimony in the record

Defense counsel presented evidence that Gadley later executed an unauthorized sale of Appellant's car, which was apparently owned by Appellant's grandmother, to Gadley's girlfriend's mother. The purchaser, who was "out some money for nothing," eventually returned the car to Appellant's grandmother. Gadley was the registered owner of a white Cadillac vehicle.

Another witness at the fight, Deri Thompson, testified that she observed Appellant, a friend who she has known since 2004 or 2005, and his Cadillac at the Heather Glen Apartments. Although she initially testified, "I ran past D. Howard. . . . I ran past him right before . . . he shot," Thompson later clarified that she did not actually see Appellant with a gun or firing a gun, nor saw his face. Thompson said she knew she had run past Appellant because "everybody knows . . . his Batman race car jacket or whatever," and then stated, "When I ran past D. Howard, he had his jacket over his head like this, and I ran past him. And after that, the shots were fired (indicating)." When asked on cross-examination if she had seen Appellant, Thompson responded, "No," and she acknowledged that she believed she had seen Appellant because of the jacket and Cadillac she saw at the apartments. Through re-direct and cross-examination, Thompson testified that she knew and was absolutely certain that the person in the NASCAR Batman jacket was Appellant because she had known him "forever," and noted that she had also had an intimate relationship with Appellant but had never dated him.

The State offered into evidence a jailhouse recording of Appellant speaking with a non-defendant regarding an alibi. The State offered the recording: (1) as a statement against interest; (2) "under rule 80.36;" (3) in rebuttal to a witness who attacked the credibility of C.J. Gadley and because "Mr. Gadley had previously testified the Defendant was with him;" and (4) because witness testimony placed Appellant's vehicle at the crime scene. Appellant objected to

supports an inference that Craig Gadley is "C.J."

4

the admission of the recording on the bases that it: (1) was not relevant; (2) was more prejudicial than probative; (3) constituted an improper attack on his character; (4) was an improper attempt to rebut an alibi defense as no alibi defense had been presented; (5) was hearsay and contained the non-declarant's hearsay within hearsay; (6) was being offered in violation of Articles 36.01 and 36.02 of the Texas Code of Criminal Procedure; (7) failed to rebut "anything [Appellant has] offered;" and (8) violated *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004), because the other declarant on the recording was not available for Appellant's cross-examination. TEX. CODE CRIM. PROC. ANN. arts. 36.01, 36.02 (West 2007).

The State responded that the recording met the hearsay exception because it contained Appellant's statement against interest regarding the establishment of an alibi, and that *Crawford* was not implicated because Appellant's statements were his alone and did not involve police conduct or interrogation. The trial court ordered the State to redact the non-declarant's statements which were unrelated to Appellant's statements regarding the establishment of an alibi. Appellant objected to the admission of the redacted recording, re-urged his previous objections, and countered that he had not offered evidence that he could not have been present at the shooting but, rather, had presented evidence to rebut both witness testimony that Appellant's car was seen at the shooting and Gadley's testimony about driving the car to another location. Appellant complained that the introduction of the recording as a basis to show Appellant's knowledge of guilt failed to rebut any evidence Appellant had offered. The State argued that it was permitted to rebut Appellant's defensive theories about identity, scheme, plan, preparation, motive, and other defensive theories as well as to show consciousness of guilt. The trial court overruled Appellant's objections and admitted the redacted recording into evidence.

5

The shell casings recovered at the apartment complex were consistent with those used in a .40 semi-automatic pistol. The bullet found in Tann's body was believed to be a hollow-point bullet which is more damaging than a traditional bullet. A firearms expert testified that a person using a semi-automatic handgun must make a conscious decision to squeeze the trigger multiple times in order for the gun to fire multiple times.

When police executed a warrant for Appellant's arrest on November 22, 2010, they found Appellant hiding in a closet. Samples taken from Appellant's hands and face were tested. Kelly Belcher, a Senior Trace Analyst for the Tarrant County Medical Examiner's Crime Laboratory, testified that gunshot primer typically contains lead, barium, and antimony and explained that when a particle contains all three, it may be described as "characteristic" of gunshot primer residue, but the existence of only two of the three elements are characterized as "commonly associated" with gunshot primer residue. Belcher also explained that the presence of only two elements may appear for legitimate reasons and may be present in other environmental sources such as a car battery where lead and antimony may be found together. The results of the tests performed on Appellant's hand samples were inconclusive because particles "commonly associated" with gunshot primer residue were detected.

Appellant moved for directed verdict on the basis that the State had failed to produce sufficient evidence to permit the jury to conclude beyond a reasonable doubt that Appellant was guilty of murder or any lesser-included offenses, including manslaughter and criminal homicide. The trial court denied the motion.

The jury found Appellant guilty and assessed punishment at twenty-two years' confinement.

## DISCUSSION

Appellant raises three issues challenging the trial court's admission of evidence and its denial of his motion for directed verdict.

### Directed Verdict

In Issue One, Appellant complains the trial court erred in denying his motion for directed verdict because insufficient evidence exists to establish Appellant's identity as the person who shot Alysha Tann. In Issue Two, Appellant argues the trial court erred in denying his directed verdict motion because the State failed to present sufficient evidence of the *mens rea* required to convict him of murder.

A challenge to a trial court's ruling on a motion for directed verdict is actually a challenge to the sufficiency of the evidence to support his conviction. *Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim.App. 1990), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991); *Dominguez v. State*, 355 S.W.3d 918, 921 (Tex.App. –Fort Worth 2011, pet. ref'd). In reviewing the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007); *Dominguez*, 355 S.W.3d at 921.

### *Standard of Review*

The State is required to prove beyond a reasonable doubt every element of the charged offense. *Jackson*, 443 U.S. at 316, 99 S.Ct. at 2787. We measure the sufficiency of the evidence by the elements of the offense as defined in a hypothetically-correct jury charge. *See Cada v.*

7

*State*, 334 S.W.3d 766, 773 (Tex.Crim.App. 2011), *citing Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).

When reviewing the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010); *Carnley v. State*, 366 S.W.3d 830, 833 (Tex.App. –Fort Worth 2012, pet. ref'd). In conducting our legal sufficiency analysis, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007)(citations omitted). Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Id.*

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex.Crim.App. 2008), *cert. denied*, 556 U.S. 1211, 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009). The jury may choose to believe some, all, or none of the testimony or any other evidence presented. *See McFarland v. State*, 928 S.W.2d 482, 496 (Tex.Crim.App. 1996). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App. 2007). When the record on appeal supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton*, 235 S.W.3d at 778; *see also Matson v. State*, 819 S.W.2d 839, 846

(Tex.Crim.App. 1991)(the presumption also applies in determining the sufficiency of the evidence to show an appellant's intent).

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *See Isassi*, 330 S.W.3d at 638; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007).

*Analysis*

The first paragraph of the indictment alleges Appellant intentionally or knowingly caused the death of Alysha Tann by shooting her with a firearm on or about November 21, 2010, in Tarrant County, Texas.[5] *See* TEX. PENAL CODE ANN. § 19.02(b)(1)(West 2011). The second paragraph of the indictment alleges Appellant intentionally, with intent to cause serious bodily injury to Alysha Tann, committed an act clearly dangerous to human life; namely, shooting Alysha Tann with a firearm that caused her death. *See* TEX. PENAL CODE ANN. § 19.02(b)(2)(West 2011). Therefore, to satisfy a hypothetically-correct jury charge, the State was required to prove that Appellant, on or about November 21, 2010, in Tarrant County, Texas, either: (1) intentionally or knowingly caused the death of Alysha Tann by shooting her with a firearm; or (2) with intent to cause Alysha Tann serious bodily injury, shot Tann with a firearm, an act clearly dangerous to human life, and caused Tann's death. *See Cada*, 334 S.W.3d at 773 (a hypothetically-correct charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and

---

[5] A person commits the offense of murder if he: (1) intentionally or knowingly causes the death of an individual; (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or (3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1)-(3)(West 2011).

adequately describes the particular offense for which the defendant was tried"), *citing Malik*, 953 S.W.2d at 240.

## Identity

Appellant first alleges the trial court erred in denying his motion for directed verdict because the evidence was insufficient to prove his identity as the person who shot Alysha Tann. We disagree.

The identity of a person charged with a criminal offense may be proven by direct or circumstantial evidence. *Johnson v. State*, 263 S.W.3d 405, 412 (Tex.App. –Waco 2008, pet. ref'd), *citing Oliver v. State*, 613 S.W.2d 270, 274 (Tex.Crim.App. 1981)(op. on reh'g)(en banc). The positive identification of a defendant as the perpetrator is sufficient to support a conviction. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex.Crim.App. [Panel Op.] 1978); *see also Aguilar v. State*, 468 S.W.2d 75, 77 (Tex.Crim.App. 1971)(the testimony of one eyewitness alone is sufficient to support jury's verdict); *Gilmore v. State*, 397 S.W.3d 226, 240 (Tex.App. –Fort Worth 2012, pet. ref'd). Therefore, viewing all the evidence in the light most favorable to the verdict, the jury could have concluded beyond a reasonable doubt based solely on Pruitt's identification testimony that Appellant was the person who used a firearm and shot Alysha Tann. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Garcia*, 563 S.W.2d at 928. Because the evidence was sufficient to support the jury's finding that Appellant was the shooter, the trial court did not err in denying Appellant's motion for directed verdict. Issue One is overruled.

## *Mens Rea*

Appellant next complains that the trial court's denial of his motion for directed verdict was erroneous because there was insufficient evidence to prove the *mens rea* element of murder.

Whether a defendant had the requisite intent to commit an offense is a fact question for the jury, and may be proven through evidence of the circumstances surrounding the crime. *Brown v. State*, 122 S.W.3d 794, 799 (Tex.Crim.App. 2003), *cert. denied*, 541 U.S. 938, 124 S.Ct. 1678, 158 L.Ed.2d 359 (2004); *Darby v. State*, 145 S.W.3d 714, 720 (Tex.App. –Fort Worth 2004, pet. ref'd). "[M]ental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs." *In re State ex rel. Weeks*, 391 S.W.3d 117, 125 n.36 (Tex.Crim.App. 2013), *quoting Hernandez v. State*, 819 S.W.2d 806, 810 (Tex.Crim.App. 1991). The specific intent to kill may be inferred from the use of a deadly weapon. *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex.Crim.App. 2012), *citing Godsey v. State*, 719 S.W.2d 578, 580-81 (Tex.Crim.App. 1986) and *Flanagan v. State*, 675 S.W.2d 734, 744 (Tex.Crim.App. 1984); *Darby*, 145 S.W.3d at 720 (intent to kill may be inferred from the use of a deadly weapon, unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result).

Although the use of a deadly weapon alone was sufficient to permit the jury to infer that Appellant possessed the requisite intent to cause Tann's death, the jury was presented with additional evidence to support the inference as well. *See Cavazos*, 382 S.W.3d at 384; *Darby*, 145 S.W.3d at 720. Before the jury was evidence that Appellant left his apartment with a semi-automatic pistol to go somewhere because "someone" was getting jumped. The jury heard testimony that Appellant used a firearm to shoot repeatedly into the crowd at the apartments, and heard an expert witness testify that a shooter must make a conscious effort to squeeze the trigger of a semi-automatic handgun multiple times to fire the weapon repeatedly. Alysha Tann, who had been fighting with Appellant's girlfriend, was the only person who was fatally shot. The jury also

11

heard testimony that the bullet retrieved from Tann's body appeared to have been a hollow-point bullet designed to expand and cause greater damage than a traditional bullet.

Viewing all of the evidence in the light most favorable to the verdict, we conclude the jury could have found beyond a reasonable doubt that Appellant, as alleged in the indictment, intentionally or knowingly caused Alysha Tann's death, or intentionally, with intent to cause serious bodily injury to Alysha Tann, committed an act clearly dangerous to human life by shooting Tann with a firearm and causing her death. *See* TEX. PENAL CODE ANN. § 19.02(b)(1)-(2)(West 2011); *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Isassi*, 330 S.W.3d at 638; *Carnley*, 366 S.W.3d at 833. Because the evidence was sufficient to support the jury's finding of the *mens rea* necessary to convict Appellant of murder, the trial court did not err in denying Appellant's motion for directed verdict. Issue Two is overruled.

**Hearsay**

In Issue Three, Appellant contends, "the trial court erred in admitting hearsay evidence that also violated [his] constitutional rights." The State complains that Appellant's third issue presents nothing for our review because: (1) the issue is multifarious; (2) Appellant complains that the jailhouse recording was inadmissible under the Texas Rules of Evidence and its admission violated both his state and federal constitutional rights; (3) Appellant has failed to separately brief his constitutional and rule-violation issues or to apply the distinctive harm analyses for each alleged violation; and (4) Appellant has failed to separately brief his state and federal constitutional complaints. *See* TEX. R. APP. P. 44.2; *Mays v. State*, 318 S.W.3d 368, 385 (Tex.Crim.App. 2010)(multifarious issue "raised a potpourri of complaints concerning the failure to give instructions," and, although the issue was subject to rejection on that basis alone, formed

12

part of the basis on which Court of Criminal Appeals relied in overruling appellant's issue).

We agree that Issue Three is multifarious. A multifarious issue is one that embraces more than one specific ground. *Smith v. State*, 316 S.W.3d 688, 694 (Tex.App. –Fort Worth 2010, pet. ref'd)(citations omitted). By combining more than one contention in a single issue, an appellant risks rejection on the ground that nothing is presented for review. *Id.* However, we may address a multifarious issue that is sufficiently developed in the brief. *Id.* We will address Appellant's contentions that we are able to discern from the brief, if those contentions have been properly preserved for our review and have not been waived.

In his third issue, Appellant complains that the recording contained hearsay and asserts the trial court's admission of the recording violated his Texas and United States Constitutional rights because the recording "of a declarant's out-of-court statements could not be cross examined."

Appellant never objected to the admission of the redacted jail recording on the basis that its admission infringed his rights under the Texas Constitution. *See* TEX. R. APP. P. 33.1(a)(as prerequisite to presenting complaint for review on appeal, party must timely complain to trial court and obtain trial court's ruling or object to trial court's failure to rule). Nor has Appellant separately briefed his Texas and United States Constitutional complaints. *See Barley v. State*, 906 S.W.2d 27, 36 (Tex.Crim.App. 1995)(where appellant failed to separately brief his point of error regarding alleged violations of the Texas Constitution, appellant's rights asserted under the Texas Constitution were not adequate because neither argument nor authority had been provided in support thereof), *citing Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App. 1991). Appellant presents no legal analysis and cites no authority in support of his contention that the admission of the redacted jail recording into evidence violated his Sixth Amendment rights under the United

13

States Constitution. *See* TEX. R. APP. P. 38.1 (appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record); *Busby v. State*, 253 S.W.3d 661, 673 (Tex.Crim.App. 2008)(court has no obligation to construct and compose appellant's issues, facts, and arguments with appropriate citations to authorities and to the record); *Cardenas v. State,* 30 S.W.3d 384, 393 (Tex.Crim.App. 2000)(appellate court has no obligation to consider inadequately briefed points of error). We conclude Appellant's constitutional complaints are not properly before us. We accordingly restrict the scope of our review to Appellant's complaint that the trial court's admission of the redacted jail recording constitutes reversible error.

We review a trial court's evidentiary rulings for an abuse of discretion. *See Klein v. State*, 273 S.W.3d 297, 304 (Tex.Crim.App. 2008), *citing Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997); *Brito Carrasco v. State*, 154 S.W.3d 127, 129 (Tex.Crim.App. 2005). A trial court abuses its discretion when its ruling is arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex.Crim.App. 2005). A trial court does not abuse its discretion if its decision is with "the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex.Crim.App. 2008). Because trial courts are in the best position to decide questions of admissibility, we uphold a trial court's decision on the admissibility of evidence when that decision is within the zone of reasonable disagreement. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex.Crim.App. 2007). We may not reverse a trial court's decision regarding the admissibility of evidence solely because we disagree with the trial court's decision. *See id.*; *see also Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex.Crim.App. 2006); *Robbins v. State*, 88 S.W.3d 256, 259-60 (Tex.Crim.App. 2002). We may affirm a trial court's decision to exclude or admit evidence if it

14

was correct under any theory of law applicable to the case, and may do so even if the trial judge fails to give any reason or used the wrong reason for its ruling. *Bowley v. State*, 310 S.W.3d 431, 434 (Tex.Crim.App. 2010).

If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, we must reverse a judgment of conviction or punishment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a). Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Kotteakos v. U.S.*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946); *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997).

Appellant complains specifically regarding the trial court's admission of a redacted audio recording of a jailhouse telephone conversation between Appellant and a person named Alexis. In general, the hearsay rule excludes any out-of-court statement offered to prove the truth of the matter asserted. *See* TEX.R.EVID. 802; TEX.R.EVID. 801(d); *Walter v. State*, 267 S.W.3d 883, 890 (Tex.Crim.App. 2008). However, a defendant's recorded statements offered against interest in a criminal case are not hearsay. TEX. R. EVID. 803(24); *see Capps v. State*, 244 S.W.3d 520, 529 (Tex.App. –Fort Worth 2007, pet. ref'd). Rule 803(24), an exception to the hearsay rule, permits the admission of statements made against a speaker's penal interest. TEX. R. EVID. 803(24); *see Walter*, 267 S.W.3d at 890 (exception for statements against pecuniary, penal, or social interest stems from common sense notion that people ordinarily do not say things that are damaging to themselves unless they believe they are true; consequently, a reasonable person would not

15

normally claim committing a crime unless it is true).

Appellant's own statements in the recorded jailhouse conversation, including his statement about an alibi and suggestion to Alexis that he was with her all night, implicate his guilt. TEX. R. EVID. 803(24); *see Capps*, 244 S.W.3d at 529. Based on the circumstances under which the statement was made the court could have determined that there are sufficient corroborating circumstances that indicate the trustworthiness of Appellant's statements. Additionally, it is evident from our review of the record that the State offered the recorded jailhouse conversation for the purpose of placing in evidence Appellant's own statements against interest, and we observe that Alexis' redacted statements were not offered for the truth of the matter asserted. *See* TEX. R. EVID. 801(d). Thus, Alexis' redacted statements were not excludable as hearsay. Moreover, because they do not constitute prior testimony given at a preliminary hearing, before a grand jury, or at a former trial, and did not involve police interrogations, Alexis' statements are non-testimonial and do not violate Appellant's Sixth Amendment right of confrontation. *See Crawford*, 541 U.S. at 68, 124 S.Ct. at 1374.

Although the trial court did not specify the basis for admitting the redacted statement into evidence, we conclude that the trial court's decision is within the zone of reasonable disagreement and did not constitute an abuse of discretion. *Cameron*, 241 S.W.3d at 19. Because the trial court did not abuse its discretion in admitting the redacted jailhouse recording into evidence, Issue Three is overruled.

### CONCLUSION

The trial court's judgment is affirmed.

GUADALUPE RIVERA, Justice

August 20, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)

17